Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention before the Court is now sitting. God save the United States and this Honorable Court. Be seated, please. All right. We have a three-judge court, whether you believe it. We have Judge Rushing with us from Western North Carolina. As you know, circumstances in Western North Carolina are very difficult, and we are very pleased to have Judge Rushing being able to join us today. She's on remote, as you can see, but she's equally a voting member of this panel. And so you need not forget her. First case we'll hear this morning is Bryant v. Stirling. And Ms. McCready, we'll hear from you. Good morning, Your Honors. May it please the Court. The District Court applied the wrong standard of review to the question of whether Bryant's execution violates the Eighth Amendment under Atkins. In State Court, Bryant sought to amend a pending Atkins petition to clarify that his diagnosis was not intellectual disability disorder, but fetal alcohol spectrum disorder, FASD, but to maintain that his execution would still violate the Eighth Amendment under Atkins and Hall. The State Court refused to hear that claim, instead issuing an anomalous procedural ruling. The District Court was correct that the State Court's decision barring Bryant's proposed amendment did not rest on adequate and independent State grounds, and therefore doesn't preclude the federal courts from hearing the claim or issuing relief. Can I ask you just a clarifying question? I know that you're definitely saying the State ground isn't adequate. I will say, I confess in reading your brief, it's not super clear to me if you're saying it's independent or if you're not saying it's independent, because the discussion of independence, as I recall, happens in the section where we're talking about whether it was on the merits or not. So are you making an independent argument or just an adequate argument in terms of the State procedural bar? Yes, Your Honor, the State procedural ruling was neither adequate nor independent, and the District Court ruled in our favor on independence, making clear that the State procedural rule rested on federal grounds. But the District Court also said it was on the merits, right? That's right. Which you don't think it was. Exactly. So just if I do the Venn diagram, the District Court thought not independent and on the merits, so epidephrine applies. Your view is the District Court was right that it was not independent, but the District Court was wrong that it was on the merits. Ergo, you somehow get neither procedural default nor epidephrine here. Exactly, Your Honor, and that's because these are two very different standards, two different tests for whether a State court ruling is independent of federal law and whether it's an adjudication on the merits under AEDPA. For independence, it doesn't matter whether the State court ruling is completely dependent on federal law, resting primarily on federal law, or just influenced by federal law. And to see how the State court decision on Bryant's proposed amendment in this case depended on federal law, you really have to dive deep into the procedural rules in South Carolina, and I'll try to make those as clear as I can. In South Carolina, there's a general bar on successive PCR applications, but there's an exception to that bar for PCR applications alleging a categorical exemption from execution. And you can see that exception at work in Bryant's own case. When Bryant returned to State court, he filed two successive PCR applications, one alleging an Atkins claim and one unrelated claims. In ruling on the State's motion to dismiss both as successive, the State court allowed the Atkins petition to move forward, but dismissed the other one. It said Atkins sets forth a categorical ban under the Eighth Amendment, which is qualitatively different from other kinds of constitutional violations at trial that may be subject to procedural default. Later, the South Carolina Supreme Court reiterated the same exception, albeit in an unpublished opinion, when it reversed a PCR court's grant of dismissal for a successive PCR application raising an Atkins claim. And the South Carolina Supreme Court said, because there is a possibility that the Constitution categorically bars petitioner's execution, we hold that the successive PCR application in this case is permissible because of extraordinary circumstances. Can I just ask, so you phrased it as a categorical bar on execution. I'm trying to think about how sweeping that is. So I'm sure you've thought about the Roper hypothetical. The Roper hypothetical is a person who argues that given what we know about brain science, executing a 19-year-old offender also violates the Eighth Amendment. Do you think that would immunize you? So if a 19-year-old offender said, you should extend Roper to cover me, does that person get out of procedural default in South Carolina? Well, if a person under Roper said, I discovered a birth certificate. No, no, no. That person's raising basically what I think of as an Atkins claim. I discovered a birth certificate that unbeknownst to all of us, I was in fact a 17-year-old offender. That person is just like a person who says, I discovered that I was in fact intellectually disabled. That person strikes me as I think we know the answer to that person probably. No, it's a person who says, Roper doesn't go far enough. A 19-year-old offender. And I'm 19. I was 100 percent 19 when I did it. But what we know about brain science and what we know about all of that, you can imagine the argument a person would make. Being 19 is not meaningfully different from being 17. Ergo, it violates the Eighth Amendment to execute me. Do you think that person gets within this exception? I think probably so. Okay, what about a person who says the Eighth Amendment categorically bars executing anyone for any crime? It's a closer call. Why? The person's saying it's unconstitutional to execute me. I think probably the answer would be that it still depended on federal law and interpretation of the Eighth Amendment. And so it still wasn't an independent grounds. But that would likely be an adjudication on the merits because there would be no material question. And so that state decision would receive the EDPA deference, which is not the case here. I just want to be clear. The argument you're making is in no way limited to people who seek extensions of Atkins. It's anybody who argues the Eighth Amendment bars their execution for basically any reason. Well, I think so on the procedural default question. It's a different answer, of course, under EDPA. But that's because the state has created this exception to its rule barring successive PCR applications, essentially prioritizing accuracy in Eighth Amendment claims over finality and allowing these successive PCR petitions to continue. But why can't you read them as saying something more modest? That would fit the facts of this case pretty clearly of saying the person, the people who have been involved. So every sort of Eighth Amendment question essentially presents two questions, right? What's the legal rule? And is the legal rule satisfied here, right? Those are basically the two questions in all of these cases. And so what this case and other cases let go forward is in cases where we know the legal rule, the legal rule is you cannot execute a person with intellectual disabilities because Atkins says that. And another Supreme Court decision says that. Like in Roper, the legal rule is you can't execute an offender who is under the age of 18. And the only dispute now is whether I satisfy that legal rule. We will make an exception to procedural default for those situations because otherwise the Supreme Court has said it violates the Eighth Amendment to execute an intellectually disabled person, and we're going to find out if this person is intellectually disabled before we execute them. It's another thing to say you should create a new legal rule, and then I should win under that new legal rule. And you could read what the South Carolina courts have done in this and other cases as saying we're not going to give you an exception to procedural default to argue for a new legal rule, which is what your client is doing here. Why isn't that a perfectly sensible way to make sense of what they've said? Sure. I'd say even under that reading of the state procedural rule and the exception, Bryant still met it. His claim was that even though his diagnosis was FASD instead of intellectual disability disorder, he still meets the Atkins criteria and is still exempt from Atkins under that principle of law. So that's what the PCR court actually adjudicated. The PCR court rejected the request to amend the application to add the FASD claim, but did actually adjudicate, is Mr. Bryant intellectually disabled, whether that's because of FASD or other things. And that's what you did not seek review of in the state Supreme Court. Isn't that right? Your Honor, I would say the PCR court adjudicated the question of whether Mr. Bryant was diagnosed with intellectual disability disorder, whether he had that specific medical condition. I read the PCR court saying he may have FASD, he may have other impairments, but whatever they are, they don't rise to the level of intellectual disability under Atkins. It said you may have FASD, you may have brain impairment, but you don't have the diagnosis of intellectual disability disorder. And so it said again and again that it considered the only question to be whether Mr. Bryant had that diagnosis. And just to be clear, we're not reviewing that, right? The only question before us is the denial of the amendment, because that's what you sought review of and that you then brought to the district court. Right. Mr. Bryant's claim is that Hall makes clear that the legal determination of intellectual disability is distinct from the medical diagnosis. And if afforded a hearing in the district court, he'll show that even though his diagnosis is different, he can still meet the criteria under Atkins because the legal determination is separate. I thought in the PCR court you said, I already have an Atkins claim. I want to bring, what was that, an extension of Hall and Atkins, a separate new claim that says executing someone with FASD violates the Eighth Amendment. In your reply brief here, you seem to be blending those and saying, no, really, that's just an Atkins claim all along. We're saying Atkins covers what he's arguing. But the PCR court saw you arguing two very different things under the Eighth Amendment. Your Honor, his proposed amendment was changing the facts of his allegations, which was his diagnosis of FASD. There are moments, of course, where he says that he's categorically exempt from execution under Atkins. And that's been his claim all along. It's his claim now. If afforded a hearing in the district court, he'll show that he meets the three criteria under Atkins. But the reason that he's not diagnosed with intellectual disability disorder is just because he has IQ scores above the range required for that diagnosis. But his contention is that IQ scores The PCR court looked beyond just the IQ scores. I mean, I think you're trying to kind of argue against the record here. And I mean, we can all go back and read it for ourselves. But I think you have to accept what the PCR court said about these two distinct arguments and what your client said about these two distinct arguments in the state court. Your Honor, the PCR court made clear that it considered the only question to be whether he was diagnosed with intellectual disability disorder. It said, for example, the court previously heard applicants request to amend his application to include an Atkins-like claim based on FASD evidence. The court denied the motion, specifically set out that the only evidence of the specific condition of intellectual disability would be received and considered. And it said this again and again before the hearing, during the hearing, after the hearing, that it considered the only question to be the specific diagnosis of intellectual disability disorder. We know under the law that there's a distinction between a medical diagnosis and a legal determination of intellectual disability. Bryant's contention is that he doesn't have the medical diagnosis. But his diagnosis is identical and still meets the legal definition. But that strikes me as an argument that the PCR court adjudicated his Atkins claim incorrectly. Maybe even contrary to and an unreasonable application of clearly established law. But that's not an argument that the PCR court didn't adjudicate the Atkins claim. It's the argument that they adjudicated it wrong. But as Judge Rushing said, I don't think we have before us a petition for habeas review on the grounds that the state court got the Atkins claim. And, of course, the problem, I'm not saying I'm unsympathetic, but the problem is if you framed your claim that way, you'd run straight into AEDPA, AEDPA deference, right, because the district court clearly adjudicated an Atkins claim. Maybe they did it super wrong, but they clearly did it. So you'd be stuck under 2254 at that point, I think pretty unambiguously. But the problem is if you're not stuck under, so it just, this strikes me as an argument that the state court got the Atkins claim wrong. Not that the state court didn't adjudicate that, didn't adjudicate an FASD claim through the lens of Atkins. Your Honor, two things. First of all, on the 2254D question, this court has made clear that the standard to determine whether a claim was adjudicated on the merits is whether it was, whether it received a full and fair adjudication on a materially complete record. And, again, we think this is where the district court went wrong, and the only ruling we're seeking from this court at this time. The question of 2254D deference was not briefed or argued before the district court, and it didn't apply this court's clear holdings that a materially complete record is required for an adjudication on the merits under 2254D. So can I ask you, before you sit down, there's just one implication of your argument that just keeps rattling around in my brain. Do you think, I understand that South Carolina has let people raise belated Atkins claims. Is there any reason why federal law requires South Carolina to do that, or could South Carolina simply, because, I mean, after all, it's not like this defendant and some of these other defendants, I mean, they were generally sentenced before Atkins. They can't claim, oh, my gosh, I had no idea the Supreme Court was going to say you can't execute intellectually disabled offenders. Atkins was quite a ways in the rearview mirror at this point, right? So what if the South Carolina Supreme Court had said, what are you talking about? Atkins was on the books at the time of your trial. If you wanted to raise an Atkins claim, you needed to raise it at trial, at sentencing, on direct appeal. And if you didn't, procedural default, no exceptions. I don't see any reason why federal law would prohibit South Carolina from doing that. Can you think of one? That may be true, Your Honor, but, again, that's not the question under procedure. I totally understand. But it seems then weird to say that South Carolina is, quote, unquote, worse off because it allows people to raise claims under a legal rule that is clearly established and has been clearly established for more than 20 years because they don't, for all the reasons they might want to do that, and then say, but having done that, you also can't enforce procedural default claims against people who want to seek the recognition of new Eighth Amendment rights that haven't been recognized since Atkins. It just, it seems like it creates weird incentives. Maybe the answer is the doctrine requires that, but it does seem that it creates really weird incentives for the state courts. Well, I think, Your Honor, the state court would be entitled to the extremely deferential standard of review under AEDPA if it had just adjudicated this claim. So it's the state burden to show procedural default. They haven't done that exactly for the reasons Your Honor is saying. They allow these claims to move forward. If it had adjudicated this claim on the merits, we would be in an entirely different procedural posture. All right. You have some rebuttal. Why don't we hear from Ms. Brown? Good morning, and may it please the court. The district court struggled a little bit with the procedural default here, and that's really the question that the certificate addresses. The district court found arguable that the state PCR court's determination maybe embraced Atkins more than the district court thought was appropriate. But what we are suggesting and what we've argued, both the district court and now here, is the district court misapprehended the way that the state court really utilized Atkins in denying the motion. Now, it's very important, I think, to recall that this is a successive action. Mr. Bryant pled guilty, as Judge Huygens had mentioned, after Atkins. Atkins was available. There was some testimony during sentencing that Mr. Bryant did not meet the qualifications for intellectual disability, then called mental retardation. That was definitely available. It was available in 2011, obviously, when he had full PCR with counsel, funding, evidentiary hearing arguments. And it was available in 2016, but this amendment was not raised, attempted amendment was not raised until May of 2018. And it was raised, notably, as a separate claim. That's at the Joint Appendix, page 521. Again, this is really a case not about the evidence on fetal alcohol spectrum disorder. It's not about the evidence in Atkins. This is a claim that goes back to default. And we all know that 2254 review is structured to ensure that state prisoners properly bring their claims to the state court. And we've heard some argument this morning, and certainly there's argument in the brief, that Mr. Bryant contends that he was somehow unfairly cut off from presenting his claim. But I would suggest to you that is the opposite of where we are today. It is because of Mr. Bryant's delay that the state court is prevented from looking at the federal issue. That goes back to one of our base opinions from the Supreme Court, Coleman v. Thompson. When a habeas petitioner fails to properly raise his claim to the state court, he has deprived the state court of that opportunity. So I think that it's been a little bit of a role reversal here, and I wanted to address that. And Coleman also explains the importance of procedural rules. These are guideposts for timely and fair disposition. Sure, but Coleman is a case about the deference that federal courts owe to regularly applied consistent state procedural rules. And I totally agree with you, and for what's noteworthy, I think if it is procedurally defaulted, he'd have to meet cause and prejudice, and there's nothing in the briefs that suggests he can meet cause and prejudice, so it really feels like the ballgame is whether it's adequate. And in Coleman, I don't think there was any doubt that it was adequate. My problem is this, which is that the procedural default is an affirmative defense, the burden is on the state. And so then the question is, what decision of a South Carolina court or what language in the rules of the South Carolina state courts tell me the answer to the specific question in this case? The question as I see it is, if you have been allowed to file a second or successive habeas PCR petition, I understand the state thinks that the state trial court was wrong in letting him do it, but it did let him do it. So having been allowed to file a second or successive PCR petition, when can you, through an amendment, add a new claim? And look, I've read the rules, and they don't seem to clearly address this situation, and I've looked at the decisions that you've cited, and they don't appear to clearly address this situation. So what is your best authority? I will say there's a lot of intuitive force to the argument you make, which is like it's kind of weird to say you can't bring a second or successive petition, but you can get around it by filing an amendment, like that seems a little weird. I agree. But what authority, either the rules or a state court decision, actually says you can't do this thing? That would go back to our plain statutory rules. What language in the rule? I mean, it just feels like a gap. What in the rules? The statute of limitations? The limits on? That seems like a real stretch. It's a statute of limitations, and it is the provision in our post-conviction relief section 1727.20 and additional sections in that particular title. One must bring all of the issues in that first application. That is what you're charged with doing. To find an exception under our successiveness bar, you have to show that that was unavailable. It was unavailable during the first one. Now, our statutes do not actually blend with the way that our Supreme Court has handled an Atkins claim. Our state law actually does. But we have to take that as a given, because under Erie Railroad, the law of South Carolina is literally whatever the Supreme Court of South Carolina says it is. So you're not going to get anywhere arguing the Supreme Court of South Carolina is wrong about what South Carolina law allows. Well, actually, it's not that it's wrong, Your Honor. It's that they've carved this exception, but the exception itself is under state successiveness rules. And if I can just explain a little bit more on that. It is very much like this Court looking at something under 2244 in the successiveness issue in 2255 cases. It does not reopen everything for amendment. It has to be shown that there was an issue that was not properly raised or didn't have a factual basis that was available with due diligence. That restricts the subject matter of the claim. So South Carolina is much like the federal law in that respect. The limitation is based on proving that an issue could not have been raised. Now, our state Supreme Court has somewhat softened that, saying Atkins is an exemption. I will note that that's not well settled. It doesn't matter if it's well settled. If the Supreme Court of South Carolina said it, it's South Carolina law, right? It was an unpublished opinion, and it was a 3-2 opinion. Why does that matter? A decision of this Court that's 2-1 is just as binding as one that's 3-0. A decision of the Supreme Court of the U.S. that's 5-4 is just as binding as one that's 9-0. Well, it makes a difference because it's still unsettled, and we still... I don't know how it's unsettled. If the Supreme Court of South Carolina says it, it's... What I agree with you is unsettled is how far does that go, right? Who does that cover other than people trying to add an Atkins? I agree that's extremely confusing to me, but I think we have to take as a given that it's not unsettled whether you can... I guess what I would say is if a future state court were to say you can't add an amendment to bring an Atkins claim, and you were trying to defend that as an AISG, I think you would be in a real tough spot, right? Well, I do want to push back just a little bit to remember... Does the Supreme Court of South Carolina let another person add an identical claim, and you can think that a court can now not let someone add the exact same claim that the Supreme Court of South Carolina lets someone else add? Well, again, we have to go back to the Supreme Court ruling. It's an unpublished opinion that's not binding. So I think that that is something that we should keep in mind. It's not binding. It's not precedent. Where does that get you? Why are you making this point? I don't quite understand. Of course. Because it seems to me you get into more trouble by impeaching the South Carolina law. It seems to me the exception is based on Atkins. They adjudicated that this was not an Atkins claim. Well, the exception... And that's your case. Absolutely, the exception is limited to Atkins, and Atkins is very... Well, I understand, but you were trying to impeach that proposition by showing tension between the statute and the Supreme Court's holding and noting that the Supreme Court's holding was unpublished in 3-2. Actually, Your Honor, the point is that they are consistent. Well, it may be consistent, but we can't draw conclusions from the fact that it's 3-2 or it's unpublished. They have made the statement, and it is a practice being followed, isn't it? It is a practice being followed. To accept Atkins claims. It is a practice being followed. I think that's an excellent way, actually, to describe it. It is a practice that's being followed. Well, it's being followed because of the Supreme Court's statements. And our statute still suggests, and it is controlling, that that limitation on successiveness will prevent the additional amendments. And that's sort of the point. The point is the state can decide the scope of its exception. Absolutely. It can. And they have decided the scope of their exception. And limited to that. And I think that is an excellent point because it goes back to the PCR court's ruling, too. There were other issues that were brought up, and there were actually two 2016 successive PCR applications that were presented. And the issues that were not Atkins were not allowed in that successive action. So, again, we have the statute that limits successiveness. We have the opinion that says Atkins itself issues, those issues may be raised. And what we have in conjunction there is one issue can be heard. And that's why the fetal alcohol spectrum disorder claim was not allowed. And it's very interesting because the district court struggled with whether... The question comes down to, I think, the subtle difficulty in this case is when they denied the amendment, they're either doing one of two things. They're deciding the scope of their exception or they're deciding the scope of federal law. And it seems to me if they're deciding the scope of federal law, it's a little different problem than if they're deciding the scope of their exception, right? It is. And that is where we contend that there was a misapprehension. Atkins is very clear. Just reference to Atkins does not mean application of Atkins. And that's where the difference is here. And we went through a full 59 proceedings, too, in arguing back and forth with the district court. And the district court kind of cleaned up the language just a little bit and said, yes, there is a difference. There's a difference between the Atkins claim and there's a difference between the amendment. And it was very clear that the evidence... Well, in part, the district court didn't rely on the fact that the petitioner in this case repeatedly described his own claim as different from an Atkins claim? Yes, sir. Absolutely. That is absolutely correct. But, again, you don't have to interpret Atkins to know that Atkins says intellectual disability is an exemption. That's almost a head note, Your Honor. That is the basis of Atkins. That is not looking at Atkins and looking at facts to see if the facts support application of the rule in Atkins. None of that had to be done. And I would suggest to you that several points will support it. One is that the amendment was denied prior to any hearing. The amendment was denied based on the scope of the successive action being very narrow, which goes back to our discussion earlier. There is only the permission to go forward on an Atkins claim. The entirety of PCR is not opened up, just like it would not be opened up if this court granted authorization for a specific successive 2254. So just in terms of the distinction you're drawing, and I agree with Judge Niemeyer, it's a fine distinction. So if a person argues, think of the petitioner in a hall, right, who says the state court is defining intellectual disability too narrowly. It's saying there are test score cutoffs, which is not required by Atkins and is, in fact, arguably just inconsistent with Atkins saying there are no test score cutoffs. That person is still making an Atkins claim, right? That person is saying, I am intellectually disabled as that term is used in Atkins, right? I agree with that. Okay. And so the difference here is the person is not saying, I am intellectually disabled as that term is used in Atkins. That person is saying, I am disabled in a way that is functionally indistinguishable from intellectual disability as that term is used in Atkins. Ergo, the Eighth Amendment forbids executing me as well. Is that the distinction you would draw? I do believe, as I track the hypothetical, that's exactly right. The evidence that was offered for fetal alcohol spectrum disorder could be some connection to intellectual disability, but you still have to show intellectual disability, and that's Atkins. And those are the three prongs under South Carolina law that had to be considered. And the PCR judge did, in fact, consider that. And he said, you have not carried your burden of proof of showing the first prong and that substantial intellectual functioning limitation, and you haven't shown the second prong, the adaptive functioning limitation. Therefore, you haven't shown the third, which was that both had to be before the age of 18 or 21, according to which manual that you were looking at at the time. So he grasped that. The PCR judge grasped that he was looking for intellectual disability. Could some evidence fall in there? He actually did look at some of the evidence offered, but a lot of what was rejected was rejected because it wasn't credible. So whether that stems from fetal alcohol syndrome disorder information or allegations or what have you, Mr. Bryant did not carry his burden of proof for an Atkins claim. That is always going to be separate. But really a different posture. That suggests a different posture before us, which would be a 2254 straight-on review of that decision. But I think we're, in this case, presented with the question of whether it was successive and untimely. Absolutely. And to the district court's credit, in 59 proceedings, he did separate those two. And we see those lines much easier now because the default for the Atkins claim came at the appeal. Mr. Bryant did not appeal the PCR judge's determination. That default was there separate. The amendment and the default analysis, really the district court struggled on that utilization of Atkins. And in this particular record, we have a very stark difference in looking at the default and looking at the utilization of Atkins. We have the magistrate in the report and recommendation saying that there was no need to analyze Atkins. Atkins has one exemption. He didn't qualify for that exemption, and that was it. That was part of that independent ground. I did want to just slightly touch on the adequate, regularly applied type of analysis. Mr. Bryant has always maintained that it was not regularly applied to him in this context. And I wanted to point out our district court and the magistrate, very familiar with South Carolina law, completely rejected that. These are statutory procedural bars, well-established. They have been utilized multiple times in this court and always in the district court. What's your best example for that? I mean, I know there are cases that establish the general proposition that South Carolina's claim presentation rules are inadequate and independent. I agree this court has said that. I was not able to find a case that looks like this one, where this court has said, as applied to an attempt to add a second or successive petition to add a new claim. Have you identified any case where we have said that's an adequate and independent state ground? No, sir, because I don't believe that Atkins claims come up very often. No, no, but the general question about whether you can use a second or successive petition that you've been permitted to file to then leverage a new claim through an amendment. That's not just limited to Atkins. I see your question, Your Honor. But again, successiveness in and of itself has to be defined, and that has to be allowed. So we're going back to the jurisdiction of the PCR court to go forward on any particular issue. Sure. Can I ask you, you mentioned the magistrate judge and the district court judge. They decided this case on different grounds, right? One of them said it is an adequate and independent state ground, so it's procedurally defaulted, and there's no cause in prejudice. That's what the magistrate judge said. The district court judge said it's not procedurally defaulted, but it was an adjudication on the merits, and he loses under AEDPA. Those are pretty different grounds of deciding a case. I assume your first order of preference is that we say that one of those two is correct. Which one of those do you think is correct? Well, I think we have to also look at the order denying the Rule 59 because the judge did separate a bit from his findings in the original order. But overall, the judge still agreed with respondents and granted our motion for summary judgment. Right, but on what grounds? On what grounds do you think we should affirm that judgment? Well, I think you can do it two ways. I'm asking you which one you think we should do it based on. I believe that... If you were writing the opinion, which one would you do? I believe that we should go with what the magistrate said. I think that that was the correct way to look at the default analysis, and it was the correct way to look at regularly applied adequate rules and the independence. I believe that that was sufficient. But, Your Honor, I did want to mention that 2254 itself says that a federal court can always deny relief. And that's what I believe the district court finally resolved once we got through the Rule 59 litigation, the filings and consideration, is that at the end of the day, Atkins says what Atkins says, and Atkins is limited to intellectual disability. And that's where I believe the district court did end up. So either way would be correct. I think it's most correct on this record. Well, in a certain sense, they really feed each other because if you have an exception in South Carolina for an Atkins claim, and the district court's ruling that this was not an Atkins claim feeds into that, which would be the magistrate judge's ruling that it was successive and untimely. I believe so, Your Honor. And I thank you for your time. If there are no further questions. Thank you. We'll hear from Ms. McGrady. Thank you, Judge Niemeyer. I'd like to start by picking up on one of your questions, which was pointing out that the state court decision barring the amendment was doing one of two things, either deciding the scope of the state court exception or deciding a question of federal law. I want to point out that whether it was doing either one of those two things, it's not independent. My point was it looks like the state has a principle and practice that excludes Atkins claims. Now, if the state court totally misconstrued the scope of Atkins, the Supreme Court had said clearly that an Atkins claim includes fetal syndrome disorder. It seems to me that's a different question. It understands Atkins, and the question is, it understood Atkins to relate to intellectual disability and allowed the exception based on that scope. So in one sense, it is dicey. I understand your point. The question is, was this decision a decision on the scope of the exception, in which case there would be a default. But if it was based on an erroneous interpretation of the scope of Atkins under federal law, then we have another proposition, don't we? Well, I think either way it's not an adequate and independent state grounds. The first way it is, because the statute, and setting aside these questions about how clear it is, but the statute in the Supreme Court of South Carolina seems to say that we do not permit successive, except if it's an Atkins claim. And then they say this is an Atkins claim, and therefore it is successive and untimely. And that's, no, that can be adjudicated. They did that, but now the question is, there was an amendment which tried to add the fetal syndrome, and that is beyond the scope of what they understood Atkins to mean, and probably what Atkins says on its face. That's the argument you're making. Maybe not. I don't know. That's one facet of the argument, the independence prong. Our point is that even if it was a decision on the bounds of the exemption, that's not adequate. And that's because it's the state's burden of proof to show that a state rule is strictly or regularly applied. And so if this was a state decision, that moving forward a claim like Bryant's can't fit this exemption, that might be fine moving forward, but it's not an independent state ground in Bryant's case. And that's because it's the state's burden to show that the rule was consistently and regularly applied at the time to a litigant in the analogous procedural posture. How do we square that with the Supreme Court's more recent cases that say, because the strictly enforced and regularly applied language tends to be in opinions that are, at this point, kind of old. And there have been two Supreme Court decisions, at least about AEDPA recently, that said just because it's discretionary, just because there's discretionary application, and actually one of them says just because you can show that it's arguably applied inconsistently sometimes, that doesn't prevent it from being adequate. You're nodding, you know the case I'm talking about. How do I square it with that? How do I square what you're saying with those cases? Well, our argument isn't that the PCR court had discretion to hear the amended claim or not. Our argument is just that the rule was not established. Whereas in, for example, the California cases, the rule is you have to do it in a timely fashion and we're adjudicating what timely means in individual situations. Sure, and there may be a safety valve and there may be discretion, but here the state even agrees the rule under South Carolina law is not settled. When the state says this was decided by a narrow majority, this was decided in an unpublished opinion, the point is that we don't know exactly what the bounds of this rule are. And that's enough to answer the adequacy question. The other thing that we agree on with the state... I thought that it was rejected as successive under a state rule that is very clear and has long been followed. And there may be some new exception for Atkins that's emerging to this rule, but the rule and the reason that the amendment was denied was that successive petitions and untimely petitions are not allowed. Now we can argue over whether South Carolina is making an exception and how big that exception is going to be and all that, but that's a little bit different than the rule that barred this claim from going forward. I see my time has expired. May I answer your question? Yeah, go ahead, please. Sure. The rule, the exception is part of the rule in the sense that even in Brian's own case you can see that he's allowed to file this successive PCR petition that would otherwise violate the general bar in petitions. Except the rule doesn't make the exception. The exception is not statutorily included, is it? No, but as Judge Heighten points out, we look to how the state courts apply these rules in practice. Well, I know, but then you're in a catch-22 because how they apply it, you can look as to how they apply it. Anyway, I think we understand that this raises a little bit of a murky question, and we very much appreciate your argument on that. Thank you, Your Honor. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Allison J. Rushing, Toby J. Heytens